## NEW-HAMPSHIRE SAVINGS BANK *vs.* COLCORD.

It is the duty of a creditor, who has a note executed by principal and surety, and who has also taken collateral security from the principal, to appropriate the avails of that security to the payment of the debt, or to hold it for the benefit of the surety, who, if he pay the debt, will be subrogated to the rights of the creditor.

If the creditor surrenders a valid collateral security, without the knowledge of the surety, the latter will be discharged entirely, or *pro tanto,* according to the value of the security thus surrendered. But if the surety assent to the surrender, it will not affect his liability.

The fact that other security, as good or better than that surrendered, was substituted for it, will not preclude the surety from availing himself of the discharge.

And, in case new security be taken, either in the form of additional principal promisors, additional co-sureties, or of a secondary class of sureties, for the payment of the original debt, whether the effect might not still be to discharge an original surety from his liability, *quære ?*

The reception of interest in advance from the principal, without the knowledge of the surety, and without a reservation of any rights to sue, is evidence of a contract for delay, which will bind the creditor and discharge the surety.

But if the surety himself has at any time paid interest in advance upon the debt, after it became due, that is evidence of his assent to an extension of time in that manner.

Forbearance is not a good consideration for a promise, where there is no debt in existence ; but if one is liable for a debt, general promises by several, in consideration of forbearance, are good, and will bind all.

Where there has been a contract with the principal for delay, upon which the surety might claim his discharge; if the principal and surety subsequently agree upon a general contract to forbear the collection of the debt for a certain period, such contract, in the absence of fraud, is upon a good consideration, (the principal being liable,) and will bind the surety as well as the principal.

It is not sufficient evidence of fraud that nothing was said respecting the payment of interest in advance previous to the making of such contract for forbearance, unless there are some circumstances of deception attending the contract.

ASSUMPSIT on a note, dated April 17, 1837, for $700, made payable at the office of said bank, on demand, with interest after four months, and signed by Edward Brackett as principal, and John Wheeler, J. C. Whittemore, Joseph Colcord, Bradbury Gill, I. S. Boyd and William White, as sureties.

Upon the back of said note were the following indorsements, to wit : " 1837, Aug. 21. Rec'd $70, prin. and int. to Dec. 17,

1837. 1840, Dec. 21. Rec'd $50 : prin. and int. is paid to Apr. 17, 1841. Rec'd int. to Apr. 17, 1842."

The writ was dated Dec. 31, 1842.

It appeared by the books of the bank that several other payments had been made of interest in advance. Among them, " 1840, Apr. 17, by int. to Aug. 17. Aug. 17, rec'd to Dec. 17. Dec. 24, 1840, by $50 prin. and int. to Apr. 17, 1841. Rec'd int. to April 17, 1842."

The evidence tended to show that at the time the note was given, Brackett, the principal, lodged with the bank, as collateral security for this note, a note for $700, made payable to himself or order, by one John A. Leighton, dated Feb. 1, 1837, in eight months, with interest, and that the bank afterwards gave up to Brackett the Leighton note, in consideration that he procured the said I. S. Boyd and William White to sign this note as sureties, they not having signed before, and that Leighton paid the note to Brackett.

It did not appear that the defendant, or any of the other sureties, knew that the Leighton note had been given up.

The evidence tended to show that the payments after April 17, 1840, were made by Whittemore and the defendant, Brackett having failed before that time ; but which of the payments were made by the defendant, or how many of them, did not appear.

Upon this evidence the defendant contended that he was discharged ; the by-laws of the bank providing that upon all notes ten per cent. of the principal and the interest should be paid every four months, and that all collateral securities should be kept, and assigned by the bank to the sureties, upon their paying the note.

The plaintiff then offered a paper, of which the following is a copy, to wit : " Concord, April 17, 1840. Whereas on the 17th day of April, 1837, Edward Brackett as principal, Silas G. Sylvester, James C. Whittemore, Joseph Colcord, Bradbury Gill, Israel S. Boyd, William White and John Wheeler, as sureties, executed a note to the New-Hampshire Savings Bank in Concord, for $700 ; and whereas the same is now due from us, in consid-

eration that the bank will forbear to collect the same for the term of four months, we hereby agree to be holden on the same for the term of six years to come, unless the same shall be sooner paid. The sum of $70 has been paid on said note."

This was signed by Brackett, and by Boyd, Gill, Whittemore and the defendant, as sureties.

The plaintiff contended that whatever might have been the effect of the transactions between the bank and Brackett, in regard to discharging the sureties, the foregoing paper was a new promise for a good consideration, to remain liable, and to waive all former advantages.

But the defendant contended that the paper was obtained from the sureties by a fraudulent concealment of the facts in relation to the transaction between the bank and Brackett, which, if known to them, would have induced a different action, and that they were therefore not bound by it.

The court instructed the jury, that if the bank gave up to Brackett the Leighton note, and gave him time not authorized by the by-laws, as was indicated by the indorsements on the note and the books of the bank, and all this without the knowledge or assent of the defendant, he was discharged unless he had bound himself by the paper dated April 17, 1840. That without such knowledge the paper would not create a liability, unless it were made upon a new and good consideration. That a promise not to collect the note for the period of four months was a good consideration, and would bind the defendant if there was no fraudulent concealment on the part of the bank of facts which were important for the defendant to know. But if the bank had so conducted as to discharge the defendant, and, in order to procure his signature to the paper, fraudulently concealed the facts from him, so that he thereby acted under a misapprehension of his rights and liabilities, his signing the paper under such circumstances would not make him liable.

The jury returned a verdict for the defendant, and the plaintiff moved to set aside the verdict, and for a new trial, on account of the misdirection of the court.

*Ainsworth*, (with whom was *Perley*,) for the plaintiff. The instruction was, if the plaintiff fraudulently concealed the facts from the defendant, so that he thereby acted under a misapprehension of his rights and liabilities, he was not liable. There was no evidence of fraud, except that there was a renewal after the paper given. This does not amount to fraud.

The sureties here must have known that the security was given up. The paper they signed described the additional names which were taken. There could not be a fraudulent concealment of a fact which was not a fraud in itself.

If the giving up of the note might have operated to discharge the sureties, their subsequent agreement was upon a good consideration, and binds them.

*Pierce & Fowler*, for the defendant.

PARKER, C. J. We have repeatedly recognized the rule, originating in equity, but now generally held to be equally a rule at law, that a binding contract for farther delay of the time of payment, made between the creditor and the principal, without the assent of the surety, discharges the latter from the obligation of the contract; and it follows, almost as a matter of course, that we should, so far as we may consistently with the forms of proceedings at common law, apply other principles of equity which regulate the relation of principal and surety. 7 *Johnson* 337, *People* vs. *Jansen.* Among these, as we have had occasion to notice in other cases, is one which requires a creditor, who has an obligation, executed by principal and surety, and who has also a collateral security from the principal, to appropriate the avails of the security to the payment of the debt, or to hold it for the benefit of the surety, who, if he pay the debt, will be subrogated to the rights of the creditor. This being the duty of the creditor, if he surrenders such collateral security without the knowledge of the surety, the latter will be discharged entirely, or *pro tanto*, according to the value of the security thus surrendered. 4 *Vesey* 824, *Law* vs. *East-India Co.* ; 8 *Pick. R.* 122, *Baker* vs. *Briggs* ; 1 *Story's Eq. Ju.*, § 326 ; 9 *Verm. R.* 147, *McCollum*

vs. *Hinckley* ; 13 *Verm. R.* 315, *Bank of Manchester* vs. *Bart-lett* ; 8 *Serg. & Rawle* 457, *Commonwealth* vs. *Vanderslice* ; 13 *Serg. & Rawle* 157, *Lichtenthaler* vs. *Thompson.* But if the surety assent to the surrender, it will not affect his liability.

In the present case, the note of Leighton was given up without the assent of the defendant, and, upon the principles above stated, he would be discharged to that extent, if there had been no subsequent transactions affecting his liability.

It is true that other sureties were added at the time to the note to the plaintiffs, in lieu of the collateral security which was surrendered. But this substitution could not preclude the defendant from availing himself of the discharge.

The additional security thus taken may or may not be as good or better than the note of Leighton, which was surrendered. But it is not a security of the same kind, and possibly might of itself be found objectionable, aside from the surrender. It introduces a new party to the contract itself, upon which the defendant was surety ; and, if the defendant is not discharged thereby, would make him liable either as principal in relation to those who have thus become promisors upon the note without his assent, or as co-surety with them. If the new signers are to be regarded, as they appear upon the face of the note, as co-sureties with the sureties who originally signed it, then those original sureties might, on a failure of the principal, derive a benefit from an addition to the number of those who were to bear the loss. But the operation of that state of the case would be to make them liable to an action for contribution to those with whom they never consented to associate as sureties. If, on the other hand, those who thus signed as sureties upon the surrender of the Leighton note, are to be regarded as the sureties of all who signed it originally, it places the original sureties " in communication" with the new ones in the character of principals ; a relation which was certainly new, and might not operate beneficially to them. It is not quite clear that the original sureties might not say, *non in hæc fædera venimus,* and claim a discharge, because other sureties were added without their concurrence, aside from their claim to a discharge on account of the surrender

of the Leighton note. But as the mere addition of other sureties is ordinarily for the benefit of those who are already liable, this may deserve farther consideration. It is not necessary to settle it at this time.

The reception of the interest in advance, at several times, furnished evidence of a contract to delay, and there is no evidence of a reservation of a right to sue on any of those occasions. This also would have operated to discharge the defendant, if without his assent, and there had been no subsequent transaction to which he was a party. *Crosby* vs. *Wyatt*, 10 *N. H. Rep.* 318.

The defendant, however, cannot avail himself in this case of any of the principles which we have stated, because, on the 17th of April, 1840, in consideration of farther forbearance for the term of four months, he agreed along with others to be holden for the term of six years longer, unless the note should sooner be paid. If no one had been liable upon the note at that time, forbearance to prosecute a claim which had no legal foundation would not have constituted a sufficient consideration. 4 *East* 464, *Jones* vs. *Ashburnham*; 1 *Bing. R.* 164, *West* vs. *Ashdown*; 2 *Hall's Sup. C. Rep.* 266, *Gould* vs. *Armstrong*. But if the defendant and the other sureties might have claimed a discharge at this time, by reason of the previous proceedings, here is a good consideration for the promise to continue liable, because Brackett was not discharged, and the forbearance is to be granted to him as well as to the rest. It is not like a case of a new promise, or acknowledgment of liability, without any consideration; and we are of opinion that, in the absence of any fraudulent concealment, such new promise must be held to be binding, even if the parties had no actual knowledge of the previous transactions which operated to discharge him. Before he enters into a new agreement upon a new consideration, he should inquire, at the peril of being held thereby to have waived his right to insist upon the discharge, if he neglects the inquiry. This imposes no greater liability upon him than he would have assumed by a promise in writing to be holden for the debt in consideration of forbearance to the maker, if he had not previ-

ously been held as surety. And, in the absence of fraudulent concealment, he cannot claim to stand in a better situation because he was originally surety, even if he had been discharged.

Again : If it were necessary to show that the defendant had knowledge of the previous surrender of the security, of the addition of the new sureties and of the contract for delay, in order to bind him by the new promise, there is sufficient evidence upon all these points to authorize a jury to find such knowledge. He had express notice of the addition of the new sureties, for their names are inserted in the new contract as signers of the note, and this should certainly put him upon inquiry how this happened. If he had made such inquiry, he must have learned that they were substituted instead of the Leighton note, which had been surrendered. The new promise not only contains the names of the new signers to the note, but specifies that $70 had been paid upon it. These things tend to show that the note was present at the time, or at least that those who signed the new promise had probably seen it after the new signatures were added, and before the last promise was made. And the case not only shows that along with the indorsements of the $70, under date of August 21, 1837, there was an indorsement of the interest up to the 17th of December following ; but it shows also that at the time of the new promise the interest was paid in advance, and that afterwards the defendant participated in such payments ; all which furnishes evidence of his knowledge and assent to what had been done, and to that mode of transacting the business ; and if he had that knowledge, he would be bound by the new promise without any new consideration. 2 *N. H. Rep.* 340, *Ladd* vs. *Kenney ;* 5 *Ditto* 378, *Whitney* vs. *Abbot ;* 12 *Wheat. R.* 183, *Thornton* vs. *Wynn ;* 12 *Mass. R.* 52, *Hopkins* vs. *Liswell ;* 8 *Pick. R.* 1, *Martin* vs. *Ingersoll ;* 17 *Pick. R.* 332, *Creamer* vs. *Perry ;* 2 *Swanst.* 185.

Without knowledge and without a new consideration, the new promise would not be obligatory. 7 *N. H. Rep.* 271, *Farrington* vs. *Brown ;* 10 *Ditto* 359, *Woodman* vs. *Eastman ;* [12 *Ditto* 320, *Merr. Co. Bank* vs. *Brown ;*] 1 *Bing.* 164, *West* vs. *Ash-*

*down;* 1 *D. & E.* 712, *Goodall* vs. *Dolley ; Pitman on Principal & Surety* 166.

There is not only all this evidence, tending to show a knowledge of the real state of the facts, but there is no evidence whatever of any concealment on the part of the plaintiffs. There is nothing, therefore, on which to leave a question of fraud to the jury. For these reasons there must be a

*New trial.*